UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | | |
|---|---|---|
| ROBERT LEE SHAW and | ) | |
| ANGELA SHAW, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAWSON GEOPHYSICAL COMPANY, | ) | |
| a Texas corporation, and | ) | |
| TRANS AERO LIMITED, a | ) | |
| Wyoming corporation d/b/a | ) | |
| Trans Aero Helicopter Services, | ) | |
| d/b/a Trans Aero Helicopters, | ) | |
| | ) | |
| Defendants, | ) | Civil Action No. 2:08-0246 |
| | ) | |
| TRANS AERO LIMITED, a | ) | |
| Wyoming corporation | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HELI-PORT DRILLING, INC. | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | | |
| And | | |
| | | |
| TRANS AERO HELICOPTER SERVICES, | ) | |
| a Wyoming corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-0134 |
| | ) | |
| DAWSON GEOPHYSICAL COMPANY, | ) | |
| a Texas Corporation, and | ) | |
| HELI-PORT DRILLING, INC., | ) | |
| a Colorado corporation | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Pending are two motions for summary judgment, one filed by Trans Aero Limited ("Trans Aero") on June 19, 2009, and the other filed by Dawson Geophysical Company ("Dawson") and Heli-Port Drilling, Inc. ("Heli-Port") on the same date.

I.

Plaintiffs Robert and Angela Shaw commenced the first of these two civil actions on April 10, 2008 by filing a complaint asserting claims against Dawson and Trans Aero (the "Shaw action").  Trans Aero commenced the second action on February 13, 2009, against Dawson and Heli-Port, seeking indemnity for losses and expenses incurred, or to be incurred, as a result of the Shaw action (the "Trans Aero action").  The Shaw and Trans Aero actions were consolidated by order of the court entered on May 26, 2009.

At some point prior to September 11, 2006, Dawson, a "geophysical exploration company," was retained to record seismic data for the possible drilling of natural gas wells at a remote location in Roane County, West Virginia.  (Dawson, Heli-Port,

2

Trans Aero Stip. ¶ 4, Dawson/Heli-Port Mot. Summ. J, Ex. C; Shaw
Compl. ¶ 5).[1]  In furtherance of its efforts to record seismic
data, Dawson hired Heli-Port to drill "shot holes" for purposes
of seismic testing at the site.  (Dawson, Heli-Port, Trans Aero
Stip. ¶ 4, Dawson/Heli-Port Mot. Summ. J, Ex. C; Shaw Compl. ¶¶
5-6).  Heli-Port is the employer of plaintiff Robert Shaw.
(Dawson, Heli-Port, Trans Aero Stip. ¶ 3, Dawson/Heli-Port Mot.
Summ. J, Ex. C; Shaw Compl. ¶ 5)  Because the exploration site
was not accessible by road, Heli-Port in turn hired Trans Aero to
deliver drilling equipment by helicopter.  (Dawson, Heli-Port,
Trans Aero Stip. ¶ 4, Dawson/Heli-Port Mot. Summ. J, Ex. C; Shaw
Compl. ¶ 16).

     Dawson and Heli-Port have each entered into separate
contracts with Trans Aero.  The contracts, which are largely
identical, are both titled "Helicopter Service Agreement."
(Dawson HSA, Dawson/Heli-Port Mot. Summ. J., Ex. A; Heli-Port
HSA, Dawson/Heli-Port Mot. Summ. J., Ex. B).  The Helicopter
Service Agreement ("HSA") between Dawson and Trans Aero became
effective on March 1, 2006.  (Dawson HSA, Dawson/Heli-Port Mot.
Summ. J., Ex. A).  Approximately five months later, on July 21,

_____

     [1] While the complaint in the Shaw action refers to Dawson as
a "general contractor," (Shaw Compl. ¶ 5), the parties have not
disclosed who retained Dawson.

2006, the HSA entered into by Heli-Port and Trans Aero took effect.  (Heli-Port HSA, Dawson/Heli-Port Mot. Summ. J., Ex. B). The stipulation of Dawson, Heli-Port and Trans Aero states that by entering into the Dawson HSA, "Dawson hired Trans Aero to provide aircraft services involving transporting Dawson's employees/agents and external cargo."  (Dawson, Heli-Port, Trans Aero Stip. ¶ 1, Dawson/Heli-Port Mot. Summ. J, Ex. C).  The stipulation further provides that by entering into the Heli-Port HSA, Heli-Port "hired Trans Aero to provide aircraft services involving external-load capabilities of Trans Aero's aircraft." (Id. ¶ 2).

Both HSAs require Trans Aero to purchase an aircraft liability insurance policy "in the minimum amount of Ten Million and 00/100 U.S. dollars . . . for each aircraft ordered into service by [either Dawson or Heli-Port]," and to name Dawson and Heli-Port as "additional insured[s]" under the policies.  (Dawson HSA at 3, Dawson/Heli-Port Mot. Summ. J., Ex. A; Heli-Port HSA at 3, Dawson/Heli-Port Mot. Summ. J., Ex. B).  Most importantly for purposes of the pending motions for summary judgment, the HSAs contain identical indemnification provisions.  In pertinent part, each HSA provides:

> General Indemnification. CUSTOMER shall indemnify TRANS
> AERO against, and shall hold TRANS AERO harmless from,

> any and all losses, damages, injuries, claims, demands,
> actions, suits and proceedings, including costs and
> expenses and reasonable attorney's fees, arising out of
> it in any manner connected with TRANS AERO's services
> to CUSTOMER or clients of CUSTOMER - *where such losses,*
> *damages, injuries, claims, demands, actions, suits and*
> *proceedings were not caused by, or brought about as a*
> *direct result of, an accident of the aircraft or a*
> *vehicle operated by TRANS AERO.*

(Dawson HSA at 3, Dawson/Heli-Port Mot. Summ. J., Ex. A; Heli-
Port HSA at 3, Dawson/Heli-Port Mot. Summ. J., Ex. B) (italics
original).

According to the complaint in the <u>Shaw</u> action, Mr. Shaw
was working for Heli-Port at the exploration site in Roane
County, West Virginia on or about September 11, 2006.  (<u>Shaw</u>
Compl. ¶ 6).  While Mr. Shaw worked, a helicopter "directed,
owned, operated and/or controlled" by Trans Aero was in the
process of delivering a drill suspended beneath it by a one-
hundred and thirty foot line.  (<u>Id.</u> ¶ 7).  The Shaws assert that
in the course of delivering the drill, "the helicopter pilot
failed to keep a proper lookout and operated the aircraft too
close to nearby trees."  (<u>Id.</u> ¶ 8).  As a result, "[w]ind from
the helicopter's rotor blade or the blade itself caused a limb,
approximately nine to ten inches in circumference and about ten
feet long, to fall from one of the tree tops."  (<u>Id.</u> ¶ 9).  While
he was talking by radio to the helicopter pilot, and waiting to

assist in landing the drill, the limb struck Mr. Shaw, causing severe and permanent injuries.  (Id. ¶¶ 7, 9).  The Shaws' three-count complaint asserts the following claims: Count I, Negligence by Dawson; Count II, Negligence by Trans Aero; Count III, Loss of Consortium.

In one letter dated October 30, 2008, and two letters dated January 8, 2009, "Trans Aero demanded indemnification for the Shaw litigation from Dawson and Heli-Port under the 'Helicopter Service Agreements.'" (Dawson, Heli-Port, Trans Aero Stip. ¶ 15, Dawson/Heli-Port Mot. Summ. J, Ex. C; 8/30/08 Kanner Letter, Trans Aero Compl., Ex. 4; 1/8/2009 Finkel Letter, Trans Aero Compl., Ex. 5; 1/8/2009 Kanner Letter, Trans Aero Compl., Ex. 6).  Dawson and Heli-Port refused, however, to acquiesce in Trans Aero's demands.  (Dawson, Heli-Port, Trans Aero Stip. ¶ 15, Dawson/Heli-Port Mot. Summ. J, Ex. C).  Given the refusal of Dawson and Heli-Port, Trans Aero commenced the Trans Aero action. Trans Aero's four-count complaint asserts the following claims: Count I, Breach of Contract against Dawson; Count II, Declaratory Judgment against Dawson; Count III, Breach of Contract against Heli-Port; Count IV, Declaratory Judgment against Heli-Port.

On February 18, 2009, five days after the Trans Aero action was commenced, Dawson amended its answer to the Shaw

6

complaint to include a cross claim against Trans Aero.  Asserting that it does not owe a duty under the Dawson HSA to indemnify Trans Aero, and seeking contribution or indemnity from Trans Aero in the event it is found liable to the Shaws, Dawson's two-count cross claim asserts the following claims: Count I, Declaratory Relief; Count II, Contribution/Indemnification.

In its March 3, 2009 answer to Dawson's cross claim, Trans Aero asserted a cross claim of its own against Dawson, and included a third-party complaint asserting claims against Heli-Port.  The claims asserted in Trans Aero's two-count cross claim and two-count third-party complaint are the same as the claims asserted against Dawson and Heli-Port in the Trans Aero action.[2] Given that the claims asserted in the Trans Aero action are the same as those asserted by Trans Aero against Dawson and Heli-Port in the Shaw action, the Shaw and Trans Aero actions were consolidated on May 26, 2009.

---

[2] If a defendant wishes to implead a non-party more than ten days after filing its original answer, leave of the court is required.  See Fed. R. Civ. P. 14(a)(1).  Despite having filed its answer to the complaint in the Shaw action on June 11, 2008, Trans Aero never sought leave to file its third-party complaint against Heli-Port.  Because Heli-Port has not sought dismissal of the third-party complaint, and because "impleader will be liberally allowed, if it will prevent duplication of suits based on closely related matters," Dishong v. Peabody Corp., 219 F.R.D. 382, 385 (E.D. Va. 2003), Trans Aero's failure to move for leave to file its third-party complaint is excused.

On June 8, 2009, Dawson and Heli-Port filed a joint answer to the complaint in the <u>Trans Aero</u> action which includes counter claims by both companies.  In its one-count counter claim, Heli-Port seeks a declaration that it does not owe a duty to defend or indemnify Trans Aero.  Dawson's two-count counter claim asserts claims for declaratory relief and indemnification/contribution, the same claims asserted in the company's cross claim in the <u>Shaw</u> action.

The plaintiffs, Mr. and Mrs. Shaw, are citizens and residents of Sevier County, Utah.  (<u>Shaw</u> Compl. ¶ 2).  Trans Aero is a Wyoming corporation with a principal place of business in Cheyenne, Wyoming.  (<u>Trans Aero</u> Comp. ¶ 3).  Dawson is a Texas corporation with a principal place of business in Midland, Texas.  (<u>Shaw</u> Compl. ¶ 3; <u>Trans Aero</u> Compl. ¶ 4).  Heli-Port is a Colorado corporation, and it appears that its principal place of business is in Grand Junction, Colorado.  (<u>Trans Aero</u> Compl. ¶ 9; <u>Shaw</u> Compl. ¶ 5).  Because the parties in both the <u>Shaw</u> and <u>Trans Aero</u> actions are diverse, and because the amount in controversy in each action exceeds $75,000, (<u>Shaw</u> Compl. ¶ 1; <u>Trans Aero</u> Compl. ¶ 10), the court is possessed of diversity jurisdiction. <u>See</u> 28 U.S.C. § 1332.  The parties do not contest jurisdiction.

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-

movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

III.

Contending that, as a matter of law, it is entitled to indemnification under the HSAs, Trans Aero seeks summary judgment on its breach of contract and declaratory judgment claims. Dawson and Heli-Port argue that because Trans Aero is not entitled to indemnification under the HSAs, summary judgment should be granted in their favor.  Dawson, Heli-Port and Trans Aero stipulate that pursuant to the HSAs, "Dawson and Heli-Port must indemnify Trans Aero and hold Trans Aero harmless from the claims in the Shaw litigation, unless the claims alleged in the litigation were not 'caused by, or brought about as a direct result of, an accident of the aircraft [. . .] operated by Trans Aero.'"  (Dawson, Heli-Port, Trans Aero Stip. ¶ 15, Dawson/Heli-Port Mot. Summ. J, Ex. C) (italics omitted).  The three companies also stipulate "that the issue to be determined with respect to the declaratory judgment actions is whether the claims in the Shaw litigation were caused by or brought about as a direct result of an accident of the aircraft operated by Trans Aero." (Id. ¶ 16).

It is unknown, as of yet, what caused the tree limb to fall and strike Mr. Shaw.  Inasmuch as the Shaws are not parties

11

to the pending motions for summary judgment, and because disputed questions of fact remain as to the cause of Mr. Shaw's injuries, at this juncture the court cannot determine whether the events which led to the institution of the Shaw action were in fact brought about as a result of "an accident of the aircraft" operated by Trans Aero.  As a result, the court is also unable, at this juncture, to determine whether Trans Aero is entitled to indemnity.

The court is able, however, to address the argument of Dawson and Heli-Port that Wyoming law renders the indemnification provisions set forth in the HSAs void.  For the reasons set forth below, it does not.  Nevertheless, in the event Trans Aero is found liable for negligence in the Shaw action, the HSAs do not require Dawson and Heli-Port to provide indemnity.  Finally, to the extent Trans Aero contends that Dawson and Heli-Port owe a "duty to defend" under the HSAs, as contrasted with an obligation to provide indemnity, the court finds Trans Aero's contention to be without merit.

A. Choice of Law

Both HSAs contain the following choice of law

12

provision:

> This <u>Helicopter Service Agreement</u> and the rights of the
> parties hereto shall in every respect be governed by,
> and construed, interpreted and applied in accordance
> with, the substantive laws of the State of Wyoming,
> United States of America, without reference to the laws
> of any other state, country or jurisdiction.

(Dawson HSA at 6, Dawson/Heli-Port Mot. Summ. J., Ex. A; Heli-

Port HSA at 6, Dawson/Heli-Port Mot. Summ. J., Ex. B).  Trans

Aero, Dawson and Heli-Port all agree that, given the choice of

law provisions, the HSAs are governed by Wyoming law.  (Trans

Aero Mem. in Supp. Mot. Summ. J. at 5;  Dawson/Heli-Port Mem. in

Supp. Mot. Summ. J. at 2).

Federal courts siting in diversity "apply the choice of

law rules of the forum state . . . ."  <u>CACI Int'l, Inc. v. St.

Paul Fire & Marine Ins. Co.</u>, 566 F.3d 150, 154 (4th Cir. 2009);

<u>see</u> <u>also</u> <u>Colgan Air, Inc. v. Raytheon Aircraft Co.</u>, 507 F.3d 270,

275 (4th Cir. 2007).  In West Virginia, "contractual choice of

law provisions will be upheld unless the chosen state has no

substantial relationship to the parties to the transaction or

unless the application of the law of the chosen state would be

contrary to the fundamental public policy of the state whose law

would apply in the absence of a choice of law provision."  <u>Bryan

v. Mass. Mut. Life Ins. Co.</u>, 364 S.E.2d 786, 790 (W. Va. 1987);

<u>see</u> <u>also</u> <u>Gen. Elec. Co. v. Keyser</u>, 275 S.E.2d 289, 293 (W. Va.

1981); cf. Lee v. Saliga, 373 S.E.2d 345, 351 (W. Va. 1988) ("Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy.").

The HSAs bear a substantial relationship to Wyoming inasmuch as Trans Aero, the drafter of the HSAs, is a Wyoming corporation with a principal place of business in Cheyenne, Wyoming.[3]  See Cavacon, Inc. v. Endress + Hauser, Inc., 557 F. Supp. 2d 706, 720 (S.D. W. Va. 2008) (choice of law provision upheld because "Indiana is the physical location of defendant Endress and is the state in which Endress is incorporated."). Because the court cannot conceive of any fundamental public policy that would be offended by the application of Wyoming law, the choice of law provisions are valid.  The HSAs are governed by the law of Wyoming.

---

[3] The assertion of Dawson and Heli-Port that Trans Aero drafted the HSAs is uncontested and thus deemed conceded. (Dawson/Heli-Port Mem. in Supp. Mot. Supp. J. at 18)

B. The Wyoming Anti-Indemnity Statute


Dawson and Heli-Port contend that because the HSAs are "incident to the drilling of gas wells . . . [and] purport to indemnify Trans Aero for Trans Aero's own alleged negligence," the indemnification provisions are void under Wyo. Stat. Ann. § 30-1-131 (2009).  (Dawson/Heli-Port Mem. in Supp. Mot. Summ. J. at 9).  Titled, "Provisions for indemnity in certain contracts; invalidity," § 30-1-131 provides:

> (a) All agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for:
> (i) Death or bodily injury to persons;
> (ii) Injury to property; or
> (iii) Any other loss, damage, or expense arising under either (i) or (ii) from:
>> (A) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or
>> (B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence. This provision shall not affect the validity of

15

> any insurance contract or any benefit
> conferred by the Worker's Compensation Law of
> this state.

WYO. STAT. ANN. § 30-1-131 (2009).  While at first blush § 30-1-131

appears to invalidate a broad range of indemnity provisions, §

30-1-132 defines the term "agreement pertaining to any well for

oil, gas, or water, or mine for any mineral" to mean,

> any agreement or understanding, written or oral,
> concerning any operations related to drilling,
> deepening, reworking, repairing, improving, testing,
> treating, perforating, acidizing, logging,
> conditioning, altering, plugging, or otherwise
> rendering services in or in connection with any well
> drilled for the purpose of producing or disposing of
> oil, gas or other minerals, or water, and designing,
> excavating, constructing, improving, or otherwise
> rendering services in or in connection with any mine
> shaft, drift, or other structure intended for use in
> the exploration for or production of any mineral, or an
> agreement to perform any portion of any such work or
> services or any act collateral thereto, including the
> furnishing or rental of equipment, incidental
> transportation, and other goods and services furnished
> in connection with any such service or operation.

WYO. STAT. ANN. § 30-1-132 (2009).

The Supreme Court of Wyoming has explained that because

"the statutory scheme created by §§ 30-1-131 and 30-1-132

restricts the freedom to contract, a common law right . . . [it]

must be strictly construed."  Union Pac. Res. Co. v. Dolenc, 2004

WY 36, ¶ 16, 86 P.3d 1287, 1293 (Wyo. 2004).  In interpreting the

phrase, "rendering services . . . in connection with any well" as

16

found in § 30-1-132, the Wyoming Supreme Court applied the
ejusdim generis cannon of statutory construction and held that
"[t]he anti-indemnity statute applies only to contracts for work
performed directly on oil, gas, and water wells." Id.; see also
Gainsco Ins. Co. v. Amoco Prod. Co., 53 P.3d 1051, 1078 (Wyo.
2002) (determining that the phrase "'or otherwise rendering
services in or in connection with any well' is limited to those
services similar to 'drilling, deepening, reworking, repairing,
improving, testing, treating, perforating, acidizing, logging,
conditioning, altering, [or] plugging . . . .'"). As noted by
Dawson and Heli-Port, it is undisputed that "Dawson, a
geophysical exploration company, was retained to record seismic
data for the possible drilling of gas wells in Roanne County,
West Virginia and, in turn, retained Heli-Port to drill shot
holes for purposes of seismic testing on the site. Trans Aero
was hired by Heli-Port to deliver, by helicopter, drilling
equipment." (Dawson, Heli-Port, Trans Aero Stip. ¶ 4,
Dawson/Heli-Port Mot. Summ. J, Ex. C) (emphasis added). Because
Dawson and Heli-Port were not engaged in "work performed directly
on oil, gas, and water wells," Dolenc, 86 P.3d at 1293, the HSAs
are not "agreement[s] pertaining to any well for oil, gas, or
water," WYO. STAT. ANN. §§ 30-1-131(a) and 30-1-132 (2009), and
are thus outside the scope of the anti-indemnity statute.

17

Even if the HSAs pertained "to any well for . . . gas," the anti-indemnity statute still would not apply.  Dawson and Heli-Port argue that the HSAs fall within § 30-1-132 because they are contracts for "furnishing or rental of equipment" or "incidental transportation."  (Dawson/Heli-Port Mem. in Supp. Mot. Summ. J. at 9).  The portion of § 30-1-132 which includes the language "furnishing or rental of equipment, incidental transportation" does not, however, apply when the contract in question relates to gas wells.  In Reliance Insurance Co. v. Chevron U.S.A., Inc., 713 P.2d 766 (Wyo. 1986) the Wyoming Supreme Court determined that "[s]ection 30-1-132 . . . separately defines an agreement pertaining to a 'well for oil, gas, or water' and an agreement pertaining to a 'mine for any mineral.'"  Reliance Ins., 713 P.2d at 769.  The court held that the first part of § 30-1-132, ending with the phrase "or otherwise rendering services in or in connection with any well drilled for the purpose of producing or disposing of oil, gas," applies when oil, gas or water wells are involved.  Id.  The second part, "which follows the word 'and,' applies to agreements which concern mining, rather than drilling."  Id.  Because the language relied upon by Dawson and Heli-Port is in the second part of the statute, in no event is it applicable to the HSAs

18

which the two companies contend "are agreements 'pertaining to any well for . . . gas.'"  (Dawson/Heli-Port Mot. Summ. J. at 9); see Gainsco Ins., 53 P.3d at 1077 ("We conclude that delivering oil by truck to a tank battery is not activity closely related to well drilling.").

It is worth noting that the applicability of the anti-indemnity statute is a largely academic question inasmuch as § 30-1-131 only renders contracts with indemnity provisions "void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence."  WYO. STAT. ANN. § 30-1-131(a)(iii)(B) (2009); see also Gainsco Ins., 53 P.3d at 1074 ("An agreement containing a provision violative of the anti-indemnity statute is not void and unenforceable in total, but only to the extent that it violates the statute. . . . Further, indemnification is not prohibited except for the indemnitee's own negligence.").  As shown below, the indemnification provisions contained in the HSAs do not obligate Dawson and Heli-Port to indemnify Trans Aero for its own negligence.

19

## C. Indemnity for Negligence

As is the case in other jurisdictions, courts interpreting contracts under the law of Wyoming seek to determine "the true intent and understanding of the parties at the time and place the contract was made." Wunsch v. Pickering, 2008 WY 131, ¶ 17, 195 P.3d 1032, 1039 (Wyo. 2008). To this end, "the words used in . . . [a] contract are afforded the plain meaning that a reasonable person would give to them." Wagner v. Reuter, 2009 WY 75, ¶ 14, 208 P.3d 1317, 1322 (Wyo. 2009) (quoting Amoco Prod. Co. v. EM Nominee P'Ship Co., 2 P.3d 534, 540 (Wyo. 2000)). When the provisions of a contract "are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." Id. Courts consider "the contract as a whole, giving effect to each provision, if possible." Hall v. Perry, 2009 WY 83, ¶ 13, 211 P.3d 489, 494 (Wyo. 2009). "Common sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts." Carlson v. Flocchini Invs., 2005 WY 19, ¶ 15, 106 P.3d 847, 854 (Wyo. 2005) (quoting Wadi Petroleum, Inc. v. Ultra Res., Inc., 2003 WY 41, ¶¶ 10-11, 65 P.3d 703, 708 (Wyo. 2003)).

Dawson and Heli-Port correctly note that the term
"caused by, or brought about as a direct result of" requires a
causal connection between the "accident" and the "losses,
damages, injuries, claims, demands, actions, suits . . . [or]
proceedings," suffered by Trans Aero.  (Dawson/Heli-Port Resp. to
Mot. Summ. J. at 8).  The phrase "accident of the aircraft or a
vehicle" requires an additional causal connection between the
"accident" and the "aircraft or a vehicle operated by Trans
Aero."  Black's Law Dictionary, 1232 (Revised 4th ed. 1968)
defines the word "of" as "denoting that from which anything
proceeds; initiating origin, source, descent, and the like" and
"[a]ssociated with or connected with, usually in some causal
relation, efficient, material, formal, or final."  While
"accident of the aircraft or a vehicle operated by Trans Aero" is
awkward phrasing, in light of the forgoing definition of "of,"
the most reasonable interpretation of the phase is that it
requires the accident to be caused by an aircraft or vehicle
operated by Trans Aero.  Thus, Trans Aero is not entitled to
indemnification where an "accident" caused by an aircraft or
vehicle operated by Trans Aero causes the "losses, damages,
injuries, claims, demands, actions, suits . . . [or]
proceedings."

21

Trans Aero argues that "even assuming *arguendo* that the tree branch fell because of the rotor wash of the helicopter, such an event is not an 'accident of the aircraft.'" (Trans Aero Reply to Resp. to Mot. Summ. J. at 8). According to Trans Aero, for an accident to occur "an 'unexpected' or 'unforseen' event is required." (Trans Aero Mem. in Supp. Mot. Summ. J. at 15). The argument goes that because falling tree branches were a "known, expected and/or unavoidable consequence" of the delivery of drilling equipment "by long line from a hovering helicopter, with its resultant rotor wash, through dense foliage," Mr. Shaw's injuries were not an "accident of the aircraft" and as such Trans Aero is entitled to indemnity under the HSAs. (Id.)

The stipulation of Trans Aero, Dawson and Heli-Port provides that "[a]t a bi-weekly Trans Aero Safety Meeting held less than two weeks prior to Mr. Shaw's accident, the President and Director of Operations of Trans Aero 'expressed concern for personnel on the ground because of dense foliage. The crew was advised to go to a longer line 135' to minimize rotor wash." (Dawson, Heli-Port, Trans Aero Stip. ¶ 11, Dawson/Heli-Port Mot. Summ. J, Ex. C). It appears, therefore, that it was forseeable that a tree limb would fall and strike Mr. Shaw. Where Trans Aero falters, however, is in its definition of the word

22

"accident."

In support of its definition of "accident," Trans Aero looks to <u>Matlack v. Mountain W. Farm Bureau Mut Ins. Co.</u>, 44 P.3d 73 (Wyo. 2002). Interpreting the terms of an insurance policy, the court in <u>Matlack</u> determined that,

> [t]he word ["accident"] may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; . . . chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops . . . .

<u>Matlack</u>, 44 P.3d at 77 (quoting <u>Reisig v. Union Ins. Co.</u>, 870 P.2d 1066, 1069-70 (Wyo. 1994)). Trans Aero also asserts, without adequate citation to the edition to which it refers, that "Webster's Revised Unabridged Dictionary" defines accident as "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." (Trans Aero Mem. in Supp. Mot Summ. J. at 15).

The court prefaced its definition of "accident" in <u>Matlack</u> by stating, "[t]he word <u>may</u> be defined as meaning . . . ." <u>Matlack</u>, 44 P.3d at 77 (emphasis added). <u>Matlack</u>, therefore,

23

does not purport to set forth an all encompassing definition of
the word.  Indeed, the Webster's Dictionary definition of
"accident" offered by Trans Aero is but one of a number of
alternative definitions.  As defined in Webster's Third New
International Dictionary 11 (2002), accident also means: "a usu.
sudden event or change occurring without intent or volition
through carelessness, unawareness, ignorance, or a combination of
causes and producing an unfortunate result."   Further, when
interpreting the terms of an insurance policy, "[a]ny doubt with
respect to coverage must be resolved in favor of the insured."
Shoshone v. Pac. Employers Ins. Co., 2 P.3d 510, 514 (Wyo. 2000).
Yet, to the extent the indemnification provisions are ambiguous,
such ambiguity is to be resolved in favor of Dawson and Heli-Port
because Trans Aero drafted the HSAs.  See Collins v. Finnell, 29
P.3d 93, 100 (Wyo. 2001) ("any ambiguity in the contract is
construed against the drafter of the agreement.").

          Trans Aero's proffered interpretation of the
indemnification provisions defies good reason.  Were Trans Aero's
position to be accepted, Trans Aero would not be entitled to
indemnity for losses resulting from unforeseeable events - even
if Trans Aero is in no way culpable - but Trans Areo would be
entitled to indemnity for losses resulting from its foreseeable

negligence.   The Wyoming Supreme Court has explained that,

> [a] contract of indemnity purporting or claimed to
> relieve one from the consequence of his failure to
> exercise ordinary care must be strictly construed.
> Accordingly, it is frequently stated as the general
> rule that a contract of indemnity will not be construed
> to indemnify the indemnitee against losses resulting
> from his own negligent acts unless such intention is
> expressed in clear and unequivocal terms, or unless no
> other meaning can be ascribed to it. Mere general,
> broad, and seemingly all-inclusive language in the
> indemnifying agreement has been said not to be
> sufficient to impose liability for the indemnitee's own
> negligence. It has been so held, for instance, with
> regard to the words 'any and all liability.'

Wyo. Johnson, Inc. v. Stag Indus., Inc., 662 P.2d 96, 99 (Wyo.

1983) (quoting 41 Am. Jur. 2d Indemnity § 16 (1968)).  While this

rule of strict construction, "should not apply where indemnity is

claimed only for the negligent acts of the indemnitor," Cities

Serv. Co. v. N. Prod. Co., 705 P.2d 321, 328 (Wyo. 1985), the

Wyoming Supreme Court has held that "[i]f the indenitee means to

throw the loss upon the indemnitor for a fault in which he

himself individually shares, he must express that purpose beyond

any peradventure of doubt."  Northwinds of Wyo., Inc. v. Phillips

Petroleum Co., 779 P.2d 753, 758 (Wyo. 1989).  In determining

whether such a purpose has been expressed, "[t]he test is whether

the contract language specifically focuses attention on the fact

that by the agreement the indemnitor was assuming liability for

[the] indemnitee's own negligence."   Id.

Given that contracts claimed to require indemnity for the indemnitee's own negligence are to be strictly construed, and in light of the rule that ambiguous contracts are to be construed against the drafter, it cannot be said that the word "accident" serves to exclude losses caused by the Trans Aero's own negligence from the exception to the requirements that Dawson and Heli-Port provide indemnity for "all losses, damages, injuries, claims, demands, actions, suits and proceedings, including costs and expenses and reasonable attorney's fees, arising out of it in any manner connected with TRANS AERO's services to CUSTOMER or clients of CUSTOMER . . . ." Further, the phrase requiring Dawson and Heli-Port to provide indemnity for all losses, "arising out of or in any manner connected with TRANS AERO's services to CUSTOMER or clients of CUSTOMER," is the epitome of "general, broad, and seemingly all-inclusive language," which has "been said not to be sufficient to impose liability for the indemnitee's own negligence." Stag Indus., 662 P.2d at 99. The indemnification provisions simply do not focus "attention on the fact that by the agreement the indemnitor was assuming liability for [the] indemnitee's own negligence." Phillips Petroleum, 779 P.2d at 758. Should Trans Aero be found liable for negligence in the Shaw action, Dawson and Heli-Port will be under no obligation

to provide indemnity under the HSAs for losses resulting from such negligence.

D. Duty to Defend

In its briefing on the motions for summary judgment, Trans Aero, at times, refers to the "duty to defend" of Dawson and Heli-Port.  (Trans Aero Mem. in Supp. Mot. Summ. J. at 1; Trans Aero Reply to Resp. to Mot. Summ. J. at 1).  "The duty to defend is distinct from . . . the duty to indemnify."  W. Heritage Ins. Co. v. Chava Trucking, Inc., 991 F.2d 651, 656 (10th Cir. 1993).  The indemnification provisions contained in the HSAs make no reference to the duty to defend, and in no event are Dawson and Heli-Port obligated to defend Trans Aero in the Shaw action.  Trans Aero apparently concedes as much in stating, "Dawson/Heli-Port must as a matter of law reimburse Trans Aero for its defense costs in this Action."  (Reply to Resp. to Mot. Summ. J. at 1).  To the extent the motion for summary judgment of Dawson and Heli-Port seek a declaration that the HSAs do not obligate them to defend Trans Aero in the Shaw action, the motion is granted.[4]

_____

[4] This, of course, does not mean that Dawson and Heli-Port will not be required to indemnify Trans Aero under the HSAs for "costs and expenses and reasonable attorney's fees."  But whether

27

IV.


It is declared that the indemnification provisions of the Helicopter Service Agreements between Dawson and Trans Aero, and Heli-Port and Trans Aero, do not obligate Dawson and Heli-Port to provide indemnity for losses, damages, injuries, claims, demands, actions, suits and proceedings, including costs and expenses and reasonable attorney's fees suffered by Trans Aero as a result of Trans Aero's own negligence.  It is further declared that Dawson and Heli-Port are not obligated under the HSAs to defend Trans Aero in the Shaw action.  It is ORDERED that the motion for summary judgment of Dawson and Heli-Port be, and it hereby is, granted to the extent of the declarations set forth above and is otherwise denied without prejudice.  See supra pp. 11-12.  It is further ORDERED that the motion for summary judgment of Trans Aero be, and it hereby is, denied without prejudice.  Id.

_____

indemnification is required cannot be determined until the cause of Mr. Shaw's injuries is established.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: August 17, 2009

John T. Copenhaver, Jr.
United States District Judge